UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ALLEN WASHINGTON, JR.** | ) | **CIVIL ACTION NO. 20-cv-00358** |
| | ) | |
| **VERSUS** | ) | **JUDGE JUNEAU** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | **MAGISTRATE JUDGE HANNA** |
| | ) | |

**MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................1

II. APPLICABLE LEGAL STANDARDS ............................................................................7

    A. Summary Judgment ...............................................................................................7

    B. The Federal Tort Claims Act .................................................................................7

    C. Louisiana Jurisprudence Applicable to Negligence Generally ..............................8

    D. Louisiana Jurisprudence Applicable to Medical Malpractice Specifically ............9

III. CONCLUSION ................................................................................................................11

## TABLE OF AUTHORITIES

### Federal Cases

Page(s)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 7

*Broussard v. United States*,
   989 F.2d 171 (5th Cir. 1993) ...................................................................................... 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................. 7

*Colson v. Groham*,
   174 F.3d 498 (5th Cir. 1999) ...................................................................................... 7

*Hatahley v. United States*,
   351 U.S. 173 (1956) .................................................................................................. 8

*Jones v. United States*,
   239 F. Supp. 474 (E.D. La. 1965), *aff'd*, 358 F.2d 309 (5th Cir. 1966) ................... 8

*King v. Chide*,
   974 F.2d 653 (5th Cir. 1992) ...................................................................................... 7

*Maddox v. United States*,
   770 F. Supp. 320 (W.D. La. 1991), *aff'd* 956 F.2d 264 (5th Cir. 1992) ................... 9

*Sewell v. United States*,
   629 F. Supp. 448 (W.D. La. 1984) ............................................................................. 9

*United States v. Mitchell*,
   463 U.S. 206 (1983) .................................................................................................. 7

*United States v. Orleans*,
   425 U.S. 807 (1976) .................................................................................................. 7

### Federal Statutes

28 U.S.C. § 2671 ............................................................................................................ 1, 7

28 U.S.C. § 2674 ............................................................................................................... 8

### Federal Rules

Federal Rule of Civil Procedure 56 ............................................................................... 1, 7

## TABLE OF AUTHORITIES

### State Cases

Page(s)

*Buffinett v. Plaquemines Parish Comm'n Council*,
   645 So.2d 631 (La. App. 4th Cir. 1994), *writs denied*, 651 So.2d 269 (La. 1995) .................. 8

*Byrd v. La. Dept. Pub. Safety and Corr.*,
   637 So.2d 114 (La. 1994) ................................................................................................. 9

*Cangelosi v. Our Lady of Lake Reg'l Med. Ctr.*,
   564 So.2d 654 (La. 1990) ................................................................................................. 9

*Cloney v. Travellers Ins. Co.*,
   253 So.2d 83 (La. App. 1st Cir. 1971), *writs denied*, 253 So.2d 212 (La. 1971) ..................... 8

*Dixie Drive-It Yourself System*,
   137 So.2d 298 (La. 1962) ................................................................................................. 8

*Hill v. Lundin & Assocs, Inc.*,
   256 So.2d 620 (La. 1972) ................................................................................................. 8

*Mart v. Hill*,
   505 So.2d 1120 (La. 1987) ............................................................................................... 8

*Martin v. E. Jefferson Gen. Hosp.*,
   582 So.2d 1272 (La. 1991) ............................................................................................... 9

*Ogletree v. Willis-Knighton Mem'l Hosp.*,
   530 So.2d 1175 (La. App. 2nd Cir.), *writs denied*, 532 So.2d 133 (La. 1988) ....................... 9

*Roberts v. Benoit*,
   605 So.2d 1032 (La. 1991) ............................................................................................... 8

*Sibley v. Bd. of Supervisors of Louisiana State University*,
   477 So.2d 1094 (La. 1985) ............................................................................................... 8

*Stevens v. Gulf Am. Fire & Cas. Co.*,
   317 So.2d 199 (La. App. 1st Cir. 1975), *writs denied*, 321 So.2d 363 (La. 1975) ................. 8

*Swartzlander v. Hunt Lab. Inc.*,
   552 So.2d 1339 (La. App. 5th Cir. 1989), *writs denied*, 556 So.2d 1280 (La. 1990) ............. 9

### State Statutes

Louisiana Civil Code article 2315 ............................................................................................ 8

La. R.S. 9:2794(A) .................................................................................................................. 9

La. R.S. 9:2794(A)(3) ............................................................................................................. 9

La. R.S. 9:2794(C) .................................................................................................................. 9

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ALLEN WASHINGTON, JR.** | ) | **CIVIL ACTION NO. 20-cv-00358** |
| | ) | |
| **VERSUS** | ) | **JUDGE JUNEAU** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | **MAGISTRATE JUDGE HANNA** |
| | ) | |

**MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

May It Please the Court:

### I.   BACKGROUND

Before the court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This memorandum and its attachments are offered in support of the motion. The above entitled medical malpractice action was initiated as a federal tort claim under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*.

This case arises out of alleged dental malpractice involving the extraction of two of the Plaintiff's wisdom teeth at the Surrey Street Community Health Center on August 23, 2018. According to the Complaint, on August 23, 2018, Plaintiff had his right upper and lower wisdom teeth removed at the Surrey Street Community Health Center, 1004 Surrey Street, Parish of Lafayette, Lafayette, Louisiana, a "satellite clinic" of Iberia Comprehensive Community Health Center, 806 Jefferson Terrace, Parish of Iberia, New Iberia, Louisiana, authorized to operate under § 303 of the Public Health Service Act and which receives funding from the United States Department of Health and Hospitals, Health Resources and Services Administration (HRSA) to help subsidize care to the uninsured and underinsured. (ECF Doc. 1).

Plaintiff further alleges that during the procedure performed by Harold Borel, D.D.S., an employee of the Clinic acting in the course and scope of his employment, for the removal of the lower and upper right wisdom teeth of Plaintiff, Allen Washington, Jr., Plaintiff suffered trauma and injury to his lower and upper jaw leaving Plaintiff with exposed lower right jawbone and exposed upper right jawbone protruding through the gum. It is Plaintiff's position that, at the time of his discharge on August 23, 2018 from Surrey Street Community Health Center, neither Harold Borel, D.D.S. nor any personnel or staff of the Surrey Street Community Health Center informed Plaintiff of his injuries or the possibility of infection to or from his gum and jaw injuries or the symptoms of infection or the necessity to promptly address any infection that might result to or from those injuries suffered to him or from the removal of his wisdom teeth. Plaintiff was only instructed to return to Surrey Street Community Health Center in one week. (ECF Doc. 1).

Plaintiff alleged that, for the days following the extraction of his wisdom teeth, he began to develop chronic neck pain which only increased in intensity and he then began to have bilateral shoulder pain as well. He did not return to the Clinic or Dr. Borel but instead, on August 27, 2018 Plaintiff's Complaint alleges that he was transported to the emergency room of Lafayette General Medical Center of Lafayette, Louisiana with complaints of posterior neck pain. Upon questioning by the emergency room personnel, Plaintiff could only relate his neck pain to perhaps lifting a battery from an automobile earlier in the day. (ECF Doc. 1).

Plaintiff's Complaint alleges that he was diagnosed by Lafayette General Medical Center Emergency Room staff with a cervical strain and given muscle relaxers, moist topical creams, light massage to sore areas, Tylenol and Ibuprofen as needed, Baclofen for pain and tension cramps and advised if not improving to follow-up with his primary care physician in

approximately one week. Again, Plaintiff did not return to Dr. Borel or to any provider at the Surrey Street Community Health Center. Instead, Plaintiff alleges that, following his discharge from the Lafayette General Medical Center Emergency Room, his condition continued to worsen in his neck, back and shoulder pain and he experienced mental confusion and disorientation. On August 31, 2018, Plaintiff presented to another emergency room, Our Lady of Lourdes Regional Medical Center of Lafayette, Louisiana for evaluation of neck pain and intermittent mental confusion and disorientation and at that time was diagnosed with sepsis and meningitis. (ECF Doc. 1). It is Plaintiff's contention that deviations in the standard of care in the removal of his right upper and lower wisdom teeth on August 23, 2018 caused him damage resulting in the sepsis and meningitis and two different spinal surgeries. (ECF Doc. 1).

In support of this position, Plaintiff has offered only one expert opinion obtained from a dentist in Florida. This opinion, attached hereto as Gvmt Ex. 1, speaks only to the dental procedure itself. In essence, Dr. Andrews, addresses the failures of Dr. Borel to take a proper medical history of the Plaintiff, to properly appreciate the Plaintiff's co-morbidities, to properly explain the procedure or obtain consent for same, to properly perform the extraction procedure, to properly apprise the Plaintiff of the possibility of post-surgical infection and to properly provide the Plaintiff with post-surgical instructions. At no time does this expert tie the alleged damage, the meningitis and resulting cervical surgery to any alleged breach of the standard of care on the part of Dr. Borel or the staff at the Surrey Street Community Health Center. Additionally, a review of his qualifications makes it clear that Dr. Andrews, a dentist, who has never seen nor examined the Plaintiff, does not possess the qualifications necessary to testify regarding the causation of the meningitis in this matter or the cause of the resulting surgeries.

Plaintiff was treated by an infectious disease doctor, Dr. Vitalis Okechukwu, while at Our Lady of Lourdes Hospital and for a period of time thereafter. A review of Dr. Okechuwku's records, as well as a review of the records from both emergency rooms, in no way ties Plaintiff's infections and resulting surgeries to this dental extraction. Dr. Andrews' expert report does not reach the ultimate conclusion in this case that the infection which resulted in Plaintiff's diagnosis of meningitis and subsequent hospitalizations and surgeries was caused by any breach of the standard of care by Dr. Borel. As such, Plaintiff is unable to provide a causal link to any alleged damage in this matter. The deadline for the retention of expert witnesses has expired as has the discovery deadline. Plaintiff has not taken the deposition of a single witness in this matter. Dr. Andrews is Plaintiff's only expert medical witness.

On the other hand, Defendant has retained two expert witnessses in this matter. One, like Dr. Harold Borel and Plaintiff's expert, Dr. Andrews, is a dentist. Dr. Joseph Boyle issued a report on January 6, 2021. In that report, Dr. Boyle reviewed the care of Dr. Borel in the removal of the Plaintiff's wisdom teeth, specifically tooth number 1 and tooth number 32. (Gvmt Ex. 2, Declaration of Dr. Joseph Boyle and attached CV and report dated January 6, 2021). Dr. Boyle noted that Dr. Borel originally saw Plaintiff on July 27, 2018 as a walk-in with complaints of pain to the top and bottom of both sides of his mouth. Dr. Borel had X-rays taken that day and diagnosed Plaintiff with irreversible pulpitis. Treatment options were discussed. Plaintiff was given a prescription for pain and infection and was scheduled to return for extraction of tooth number 1 and number 32. (Gvmt Ex. 2).

Plaintiff returned on August 23, 2018 for the extractions. Dr. Boyle noted that Dr. Borel properly had the Plaintiff sign a consent form, attached hereto as Gvmt Ex. 3, gave Plaintiff a local anesthetic, and extracted the teeth in question. Following the procedure, Plaintiff was provided a

4

set of oral and written post-operative instructions, attached hereto as Gvmt Ex. 4, and provided a prescription for pain medication. A follow-up appointment was made for Plaintiff to return to the Clinic for tissue evaluation. (Gvmt Ex. 2).

Dr. Boyle concluded that Dr. Borel did not breach the standard of care in the extraction of the teeth at issue. He noted that the extractions were correctly performed. He also noted, as is seen in Gvmt Ex. 3, that the consent this Plaintiff signed listed risks that are associated with the recommended treatment, such as infection and failure of the wound to heal. He also noted that routinely, with tooth extractions, there are sharp pieces of bone near the extraction area that can delay healing and that because this is so common, there is a paragraph dedicated to this issue on the post-operative instructions provided to Plaintiff. (Gvmt Ex. 4, ¶ 7). Additionally, the issue of these bony edges is also included in the consent form signed by Plaintiff. (Gvmt Ex. 3).

Dr. Boyle opines, in Gvmt Ex. 2, that Dr. Borel met the standard of care in the diagnosis of, in the taking of the medical history, in planning treatment for, in obtaining consent form, in his performance of the surgical procedure on and in his post-operative instructions provided to Plaintiff. Further, it is Dr. Boyle's opinion that because Dr. Borel met the standard of care for the extractions, he did not cause injury to the mouth of Mr. Washington and did not cause any physical impairment to Mr. Washington. Dr. Boyle's report includes actual analysis of each of Dr. Andrew's conclusive "breaches of the standard of care" contained in his expert report and concludes that, as for the dental procedure at issue here, it was correctly performed and did not cause the harm alleged herein by Plaintiff. (Gvmt Ex. 2).

Defendant's second expert witness is a doctor specializing in the area of infectious disease and his report addresses the very issue of causation that Plaintiff has failed to prove in this matter. Essentially, Dr. David Martin, at page 2 of his report, opines that initially, there is no reason that

5

Dr. Borel should have given this Plaintiff any additional antibiotics immediately following his wisdom tooth removal as a prophylactic measure.  (Gvmt Ex. 5, Declaration of Dr. David Martin and attached CV and report dated October 1, 2020).  Dr. Martin discusses that most uncomplicated dental procedures result in the appearance of bacteria in the patients' blood stream and that, in the vast majority of the cases, this bacterium does not result in a systemic infection.  However, if a patient has a heart valve disease, there is a higher risk for systemic infection following routine dental work and for this reason, those patients are given prophylactic antibiotics.  Plaintiff did not fall into this risk group and thus did not require prophylactic antibiotics.

It appears that Plaintiff's hypothesis in this case is that the temporal association between Plaintiff's tooth removal and his cervical abscess and surgery would suggest that the tooth removal was the source of the infection.  However, Dr. Martin notes that the infecting bacterium was *Staphylococcus Aureus* ("*S. Aureus*") and that fact alone argues strongly against Plaintiff's hypothesis.  *S. Aureus* is not a normal bacterial inhabitant of the mouth.  The source of *S. Aureus* infections is usually the patient's skin from things like intravenous lines inserted in patients for treatment of other diseases or the self- injection of illicit drugs by patients themselves.  Dr. Martin states that Plaintiff's medical records are notable for a past history of intravenous heroin use.  (Gvmt Ex. 5).  Finally, Dr. Martin opines that in his 40 years of practice as an infectious disease consultant, he never saw a systemic *S. Aureus* infection following a dental procedure and was unable to find report of any such case in medical literature.

Dr. Martin agrees that there is no evidence that Dr. Borel did not meet the standard of the care when he extracted Plaintiff's wisdom teeth on August 23, 2018.  He recognizes that none of the medical records indicate that Plaintiff suffered an infection at the wisdom tooth extraction site

post operatively. Finally, Dr. Martin posits that it is medically unlikely that the cervical spine abscess was related, in any way, to the wisdom tooth extraction in this matter. (Gvmt Ex. 5).

Because Plaintiff is unable to prove any deviation from the standard of care or that any deviation caused any alleged damage in this case, this matter must be dismissed.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure requires the mover bear the initial burden to inform the court of the motion's basis and to show a lack of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Next, the burden shifts to the non-movant to demonstrate a genuine issue of fact does exist. *Id.* at 323-24. Federal Rule of Civil Procedure 56 provides "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Courts view the facts and inferences in a light most favorable to the non-movant. *Colson v. Groham,* 174 F.3d 498, 506 (5th Cir. 1999), *citing*, *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). Conclusory allegations unsupported by specific facts cannot prevent summary judgment. Moreover, "plaintiff [can]not rest on his allegations [. . .] without any significant probative evidence tending to support the complaint." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

### B. The Federal Tort Claims Act

The United States, as a sovereign, is immune from suit, except when it consents to be sued. *United States v. Mitchell,* 463 U.S. 206 (1983). The Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, (FTCA) is a limited waiver of immunity allowing recovery for injury caused by negligent employees of the Government while acting within their scope of office or employment. *United States v. Orleans,* 425 U.S. 807, 813 (1976). Under the FTCA, liability is decided under "the law

7

of the place where the act or omissions occurred." 28 U.S.C. § 2674; *Hatahley v. United States*, 351 U.S. 173 (1956). Liability is alleged under the FTCA; therefore, Louisiana law governs.

### C. Louisiana Jurisprudence Applicable to Negligence Generally

Louisiana courts apply duty/risk analysis to assess liability under Louisiana Civil Code article 2315. A four-prong test decides liability: 1) was defendant's conduct a substantial factor (cause-in-fact) bringing about the harm; 2) did defendant owe a duty to plaintiff; 3) was the duty breached; and 4) was the risk of harm within the scope of protection afforded by the duty? *Roberts v. Benoit,* 605 So.2d 1032, 1041-42 (La. 1991); *Mart v. Hill*, 505 So.2d 1120, 1122 (La. 1987); *Hill v. Lundin & Assocs, Inc.*, 256 So.2d 620 (La. 1972); *Dixie Drive-It Yourself System*, 137 So.2d 298, 302 (La. 1962). For a plaintiff to recover, all four inquiries must be answered affirmatively.

In a civil action for damages in Louisiana, a plaintiff has the burden of establishing by a preponderance of evidence every essential element of the claim. *Buffinett v. Plaquemines Parish Comm'n Council*, 645 So.2d 631, 638 (La. App. 4th Cir. 1994), *writs denied,* 651 So.2d 269 (La. 1995). To prove by preponderance of evidence means producing clear and convincing evidence, which creates belief in the trier of fact's mind of the allegation's truth. *Jones v. United States*, 239 F. Supp. 474, 480 (E.D. La. 1965), *aff'd*, 358 F.2d 309 (5th Cir. 1966); *Cloney v. Travellers Ins. Co.*, 253 So.2d 83, 94 (La. App. 1st Cir. 1971), *writs denied*, 253 So.2d 212 (La. 1971). Possible connection between injury and accident is insufficient; instead, a probable connection must be proved. *Stevens v. Gulf Am. Fire & Cas. Co.*, 317 So.2d 199 (La. App. 1st Cir. 1975), *writs denied*, 321 So.2d 363 (La. 1975). For negligent conduct to be a cause-in-fact, it must be a substantial factor in bringing about harm. *Dixie Drive-It Yourself Sys.,* 137 So.2d at 302. Negligent conduct is not actionable if it does not cause injury. *Broussard v. United States*, 989 F.2d 171 (5th Cir. 1993); *Sibley v. Bd. of Supervisors of Louisiana State University*, 477 So.2d 1094, 1099 (La. 1985).

8

D.  **Louisiana Jurisprudence Applicable to Medical Malpractice Specifically**

La. R.S. 9:2794(A) sets out the elements of medical malpractice in Louisiana. A plaintiff must prove: 1) the applicable standard of care, (i.e., the degree of knowledge/skill possessed or care ordinarily exercised by physicians under similar circumstances); 2) a breach of that standard proximately resulting in; 3) injuries that would not have otherwise occurred. La. R.S. 9:2794(A); *Maddox v. United States,* 770 F. Supp. 320, 321 (W.D. La. 1991), *aff'd,* 956 F.2d 264 (5th Cir. 1992); *Byrd v. La. Dept. Pub. Safety and Corr.,* 637 So.2d 114, 122 (La. 1994).

Injury alone does not create presumption of negligence. La. R.S. 9:2794(C). Unless a patient's harm would have been avoided, there is no liability even if negligent treatment is rendered. If harm would have probably resulted regardless, the plaintiff has not proven his case. La. R.S. 9:2794(A)(3); *Swartzlander v. Hunt Lab. Inc.*, 552 So.2d 1339 (La. App. 5th Cir. 1989), *writs denied*, 556 So.2d 1280 (La. 1990).

Care is not analyzed in hindsight but in light of facts known at the time of treatment. *Ogletree v. Willis-Knighton Mem'l Hosp.*, 530 So.2d 1175 (La. App. 2nd Cir.), *writs denied,* 532 So.2d 133 (La. 1988). If another cause is as equally plausible as defendant's negligence, plaintiff will fail to prove it is more likely than not the injury arose from defendant's negligence. *Cangelosi v. Our Lady of Lake Reg'l Med. Ctr.*, 564 So.2d 654 (La. 1990). Courts rely on expert witnesses in the medical profession to decide if a plaintiff's burden is met. *Sewell v. United States*, 629 F. Supp. 448, 455 (W.D. La. 1984). Opinions from medical experts are needed to tell if defendant had the right degree of skill or did not use reasonable care. *Martin v. E. Jefferson Gen. Hosp.*, 582 So.2d 1272 (La. 1991).

Both parties in this case have hired expert witnesses. All of those reports are attached to this Motion for Summary Judgment. Plaintiff's single expert report is conclusory. There are three

lists of breaches of the standard of care. None are explained and related to the facts in this matter. And more importantly, not a single portion of Plaintiff's single expert report addresses the issue of causation of the alleged damage in this matter, i.e. whether the bacterium contracted by Plaintiff was one that resulted from this routine dental procedure. This issue is never addressed in any of Plaintiff's medical records and Plaintiff has not deposed a single witness in this matter or obtained a report from any infectious disease specialist. The deadlines for discovery and expert reports in this matter have elapsed. Importantly, Plaintiff's own medical records contain other more likely risk factors which contributed to his risk for infection from this particular bacterium. Thus, because there is no material issue of fact that Plaintiff does not meet the burden of proof on the issue of causation, and therefore can prove no harm in this matter, this Court must grant summary judgment and this matter must be dismissed.

      Defendant retained two expert witnesses, a dentist and an infectious disease specialist, to review the care given to Allen Washington, Jr. at the Surrey Street Community Health Center and to opine on whether the harm alleged, i.e. the cervical abscesses and resulting surgeries, were caused by any breach of the standard of care by Dr. Borel. As detailed above, both reports of Defendant's experts conclude that Dr. Borel did not breach the standard of care in his care and treatment of Plaintiff. Further, Dr. Martin looked specifically at the bacterium that caused the infection underlying the alleged harm and concluded that it was medically unlikely that the bacterium, *S. Aureus*, that caused the cervical abscess in Plaintiff's spine was connected to the wisdom tooth removal. This issue was not addressed in Plaintiff's single expert report and is not addressed in any of his medical records. No doctor who treated Plaintiff for the harm alleged in this matter connected the wisdom tooth extraction to the cervical abscess and spinal surgery. Other than vague conclusory statements in his Complaint, Plaintiff has no evidence that any damage he

alleges in this matter was caused by any deviation in the standard of care by Dr. Borel or the staff at the Surrey Street Community Health Center.

Plaintiff filed this lawsuit claiming that the harm caused to him, i.e. the cervical abscess and resulting surgeries, was the result of any breach in the standard of care by Defendant. There is no issue of material fact that Plaintiff cannot prove causation in this case. Even if Plaintiff can prove the breaches that his expert witness says occurred in this matter, he cannot prove that any breach caused any harm in this matter. Consequently, this matter must be dismissed.

### III.   CONCLUSION

In light of the foregoing, the United States urges the Court to grant summary judgment and dismiss this matter with prejudice.

Respectfully submitted,

ALEXANDER C. VAN HOOK
Acting United States Attorney

BY:   *s/Jennifer B. Frederick*
JENNIFER B. FREDERICK (#23633)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone:   (337) 262-6618
Facsimile:   (337) 262-6693
Email:   jennifer.frederick@usdoj.gov